### DOUGHERTY v. DOYLE et al.

(Circuit Court, N. D. New York. January 22, 1894.)

PATENTS—LIMITATION OF CLAIM—MINCE-PIE COMPOUNDS.

 The Allen patent, No. 268,972, for a dry mince-pie compound, composed essentially of cooked meat, dried fruit, sugar, and spices, "compounded dry," if not void for want of invention, is restricted to a compound in the preparation of which no free liquid is used, and does not cover a compound in which 140 pounds of boiled cider has been added to each 1,000 or 1,200 pounds of the dry ingredients.

In Equity. Suit by Thomas E. Dougherty against Michael Doyle and Albert S. Bigelow for infringement of a patent. Bill dismissed.

Hey, Wilkinson & Parsons, (Hey, Ephraim Banning and Jas. I. Kay, of counsel,) for complainant.

osiah Sullivan, for defendants.

WALLACE, Circuit Judge. Infringement is alleged in this suit of letters patent No. 268,972, granted to Henry Julian Allen, dated December 12, 1882, for preserved compound for mince pies. The defenses are want of patentable novelty and noninfringement. In the general statement in the specification the object and nature of the invention is set forth by the patentee as follows:

"Mince-pie compounds have heretofore been prepared in the wet state, with free water present in the shape of wine, cider, or other liquid, and put up in cans, jars, and barrels, which condition of the compound involves a liability to ferment, decay, or mold, and in which state the compound is not easily handled in definite quantities. My invention, while employing no substantially new ingredients, is founded upon the combination of old ingredients, which are combined, both chemically and mechanically, under peculiar conditions that enable me to produce a practically dry compound that may be put up as a dry solid in separate packages, which remain stable, and keep sweet and pure, under all ordinary influences."

The specification describes the ingredients of the compound to be cooked meats, sugar, desiccated apples or other fruit, and spices. In preparing it, the beef or other cooked meat, and the dried apples or other dried fruits, are chopped or ground to a suitable fineness; sugar, spices, and salt are added; and the ingredients are thoroughly rubbed or mixed together dry, until a stable compound is formed. The compound is then ready to be put up in suitable packages for use, sale, and transportation. The specification points out that when the ingredients are compounded dry the sugar absorbs the moisture from the cooked meats, and forms a syrup, which is at once taken up by the dried fruits and spices, and effectually permeates and coats the various ingredients. After giving the proportional quantities of the ingredients, and stating that these proportions may be varied as the taste of the operator or buyer may dictate, the specification says:

"A small quantity of wine, brandy, or other liquor may be added to the compound while in course of preparation, or afterwards, if desired. This, however, is quickly absorbed by the dry products, and creates no sensible moisture in the composition."

The specification concludes by the following disclaimer:

"I am aware of the fact that the ingredients named by me are not new in mince-pie compounds when compounded in a wet state, and I am also aware that desiccated compounds of meats and cereals have been prepared to form pemmicans, dried soups, etc., and I do not claim such."

The claim is as follows:

"As an improved article of manufacture, a dry mince-pie compound, composed essentially of cooked meat, dried apples or other fruit, sugar, and spices, compounded dry, whereby the meat is desiccated and preserved without being carbonized, and a dry, stable composition formed, substantially as herein shown and described."

The patentee was not the first to make a commercial mince-pie compound. Such an article had been made and sold in large quantities by grocers and other dealers. Nor was he the first to make a compound of new ingredients. As he states in the disclaimer, the ingredients were old when compounded in a wet state. In the old compounds fresh apples were used, and also cider, wine, or other

liquids; consequently free water was present in the compound. The new thing described in the specification as made by him is a dry or solid compound, instead of the moist and more or less liquid compound previously made by the housewife and the grocer. The free moisture is carefully excluded from the new compound by using no liquids or fresh fruits, and mixing the ingredients together in a substantially dry state. In this respect, and in this only, does the patented compound differ from the old ones.

It is open to doubt whether there is any patentable novelty in the compound of the patent. It is undoubtedly true that Allen was the first to conceive the practicability of making a compound which could be put up in convenient packages for sale, would keep for an indefinite length of time, and could be readily prepared for family use by the admixture of water. The great convenience of such a preparation commended itself quickly to the public, and led to the introduction of a condensed mince meat which has achieved an extraordinary commercial success. But the patent cannot be sustained unless there was invention in devising the compound; it cannot rest upon the mere thought, however felicitous, that the compound, when made, would be acceptable and popular. Mince-pie compounds are of such varying liquidity that it seems very questionable whether any inventive faculty can be involved in making them more or less liquid, and it would seem that any changes in the proportions or quantities of the ingredients necessary to make the compound more or less liquid or solid would be within the ordinary skill of the grocer or cook. It is shown to have been customary in making the grocer's compounds to graduate the quantity of liquid according to the dryness of the fruit, less being used with the cider apple and more with drier apples. It would seem an obvious thing to reduce the quantity of the liquid ingredients, or to use drier fruits instead of juicier ones, if it were desired to make a less liquid compound, and to increase the liquid or use the juicier fruits if a more liquid compound were desired. Allen did but little more than this in using no free liquid, and using only dried fruit with the meat and spices. Nevertheless, his dry compound may be regarded as something more than the old preparations with a different degree of liquidity. It is a new commercial article. In view of its utility and value, and the presumption arising from the grant of the patent, any doubt as to patentable novelty ought to be resolved in favor of the patentee.

But the narrowness of the invention, as well as the description in the patent, require the claim to be narrowly construed. It cannot be construed to cover any compound which is substantially dry without invalidating it as a patent for a mere improvement in degree. When is the compound sufficiently free from moisture to be "compounded dry" within the meaning of the claim? It is described as "a practically dry compound, that may be put up as a dry solid." It is made by a process of preparation which, when complete, forms "a stable compound." It is one which is so dry that when liquid seasoning is used no "sensible moisture" is created. The patentee evidently supposed that all the moisture in the com-

pound would be that derived from the juices of the cooked meat, which, as he states in the specification, passes into the sugar, and converts it into a syrup of meat, which is absorbed by the dried fruits. The most satisfactory criterion afforded by the description to determine when the compound is sufficiently free from moisture to answer the terms of the claim is found in the fact that no free liquid is used in preparing it, and the only moisture present is what is produced by the juices of the cooked meats and dried fruits.

It seems very clear that the condensed mince meat made by the defendants is not compounded dry, within the meaning of the claim. It is made by adding to the ingredients described in the patent 140 pounds of boiled cider to each 1,000 or 1,200 pounds of the compound. This is an addition in volume of about 12 or 14 gallons of liquid, and is more than the other ingredients will absorb. When packed, it is a sensibly moist product, which will wet paper, and destroy paper boxes, and for this reason it is wrapped in a waxed paper, to prevent the moisture from injuring the outer package.

The bill is dismissed, with costs.